**P O R T E R  |  S C O T T**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
David R. Norton, SBN 291448
Larissa C. Celaya, SBN 332882
2180 Harvard Street, Suite 500
Sacramento, CA 95815
TEL: 916.929.1481
FAX: 916.927.3706
EMAIL: cfessenden@porterscott.com
dnorton@porterscott.com
lcelaya@porterscott.com

Attorneys for Defendants BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY, (also erroneously sued as CALIFORNIA STATE UNIVERSITY, SACRAMENTO; and STATE OF CALIFORNIA) and ELVIA RAMIREZ

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOOKER COOK, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY; CALIFORNIA STATE UNIVERSITY, SACRAMENTO; STATE OF CALIFORNIA; ELVIA RAMIREZ, an individual; and DOES 1 through 50, inclusive,<br>          Defendants.<br><br>_____/ | **CASE NO.: 2:23-cv-00843-DJC-CKD**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY AND ELVIA RAMIREZ'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Date:** February 6, 2025<br>**Time** 1:30 PM<br>**Courtroom:** 10, 13th Floor<br>**Judge:** Honorable Daniel J. Calabretta<br><br>Complaint Filed: 10/14/2022<br>First Amended Complaint Filed: 12/16/2022<br>Removed: 5/5/2023<br>Second Amended Complaint Filed: 6/16/2023 |

/ / /

/ / /

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY AND ELVIA RAMIREZ'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................................ 1

II. STATEMENT OF FACTS ............................................................................................. 2

    A. Plaintiff's Employment History ............................................................................ 2

    B. Defendant Elvia Ramirez ...................................................................................... 2

    C. Plaintiff's Harassment Allegations ....................................................................... 3

        1. Ramirez is "cold and cruel" at 2017 CFA Meeting ...................................... 3

        2. Ramirez's November 2018 Discriminatory Comment ................................... 3

        3. October 30, 2020 Email Incident ................................................................... 3

        4. Ramirez Shuts Her Door When Black People Come Around ........................ 4

        5. Ramirez's Conduct Towards African Americans During Faculty Meetings ........ 5

    D. Plaintiff's November 3, 2020 and February 1, 2021 Title IX Complaints ............. 5

    E. 2021 PAS Position Hiring Process ........................................................................ 6

        1. 2021 PAS Search Committee Is Created ....................................................... 6

        2. 2021 PAS Job Posting ................................................................................... 6

        3. Candidate Applications Are Submitted and Reviewed .................................. 7

        4. "Short List" Candidates Are Interviewed ..................................................... 8

        5. Successful Candidates .................................................................................... 8

    F. Plaintiff's August 23, 2021 OEO Complaint ......................................................... 9

    G. Procedural History ................................................................................................. 9

III. LEGAL STANDARD ................................................................................................. 10

IV. ARGUMENT .............................................................................................................. 10

    A. Plaintiff's First Claim for Relief Fails as a Matter of Law Under Title VII ........ 10

    1. Plaintiff's First Claim for Relief for Racial Discrimination Fails as a Matter of Law ....... 11

       a. Plaintiff Cannot Establish a Prima Facie Claim for Racial Discrimination ..................... 11

       b. Defendant CSU Can Establish that Plaintiff Was Not Selected for the 2021 PAS Position

        for Legitimate, Non-Discriminatory Reasons .................................................................. 12

       c. Plaintiff Cannot Establish Pretext .......................................................................... 13

    2. Plaintiff's First Claim for Relief for Racial Harassment Fails as a Matter of Law Under

       Title VII .............................................................................................................. 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BOARD OF TRUSTEES
OF CALIFORNIA STATE UNIVERSITY AND ELVIA RAMIREZ'S MOTION FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

B. **Plaintiff's Second Claim for Relief Against CSU for FEHA Race Discrimination Fails as a Matter of Law** .................................................................................................. 17

C. **Plaintiff's Fourth Claim for Relief Against Defendant CSU for FEHA Retaliation and Age Discrimination Fails as a Matter of Law** ................................................................... 18

    *1. Plaintiff's Fourth Claim for Relief for Retaliation Fails as a Matter of Law* ...................... 18

    *2. Plaintiff's Claim for Age Discrimination under FEHA Fails as a Matter of Law* .............. 20

D. **Plaintiff's Second Claim for Relief Against Defendant CSU for Race Harassment and Plaintiff's Fifth Claim for Relief Against Both Defendants for Age Harassment Fail as a Matter of Law Under FEHA** ................................................................................. 21

E. **Plaintiff's Third and Sixth Claims for Relief Against Defendant CSU for Failure to Prevent Discrimination and Harassment Fail as a Matter of Law Under FEHA** .............................. 21

F. **Plaintiff's Seventh Claim for Relief Against Defendant CSU for Negligent Hiring, Supervision, Training, and Retention Fails as a Matter of Law** ............................................ 22

V. **CONCLUSION** .............................................................................................................. 23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY AND ELVIA RAMIREZ'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Alamao v. Practice Management Information Corp.*,
219 Cal.App.4th 466 (2013) ........................................................................................................ 22

*Beal Bank, SSB v. Pittorino*,
177 F3d 65 (1st Cir. 1999) ......................................................................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................................... 10

*Chuang v. University of California Davis, Bd. of Trustees*,
225 F.3d 1115 (9th Cir. 2000) .................................................................................................... 11

*Cummings v. Starbucks Corp.*,
No. CV1206345MWFFFMX, 2013 WL 12131281 (C.D. Cal., Aug. 30, 2013) .............. 10, 11, 18

*Dominguez-Curry v. Nevada Transp. Dept.*,
424 F.3d 1027 (9th Cir. 2005) .................................................................................................... 13

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) ........................................................................................................ 14, 17, 21

*General Sec. Services Corp. v. County of Fresno*,
815 F.Supp.2d 1123 (E.D. Cal. 2011) ................................................................................... 22, 23

*Guz v. Bechtel Nat. Inc.*,
24 Cal.4th 317 (2000) ................................................................................................................. 18

*Hermosillo v. County of Orange*,
562 F.Supp.3d 802 (C.D. Cal. 2021) ............................................................................... 10, 11, 18

*Kortan v. California Youth Authority*,
217 F.3d 1104 (9th Cir. 2000) .................................................................................................... 16

*Loggins v. Kaiser Permanente Internat.*,
151 Cal.App.4th 1102 (2007) ............................................................................................... 18, 19

*Lyle v. Warner Brothers Television Productions*,
38 Cal.4th 264 (2006) .......................................................................................................... 16, 21

*Lyons v. England*,
307 F.3d 1092 (9th Cir. 2002) .................................................................................................... 11

*Manatt v. Bank of America, NA*,
339 F.3d 792 (9th Cir. 2003) ................................................................................................ 14, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .................................................................................................................... 10

*Mattioda v. Nelson*,
98 F.4th 1164 (9th Cir. 2024) ..................................................................................................... 16

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............................................................................................................... 11, 18

*McGinest v. GTE Service Corp.*,
360 F.3d 1103 (9th Cir. 2004) .................................................................................................... 14

*Nichols v. Azteca Restaurant Enterprises, Inc.*,
256 F.3d 864 (9th Cir. 2001) ...................................................................................................... 14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY AND ELVIA RAMIREZ'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

*Pinder v. Employment Development Department,*
227 F.Supp.3d 1123 (2017) ................................................................ 18, 21

*Reeves v. Safeway Stores, Inc.,*
121 Cal.App.4th 95 (2004) ................................................................ 19

*Reeves v. Sanderson Plumbing Products, Inc.,*
530 U.S. 133 (2000) ......................................................................... 13

*Sanchez v. City of Santa Ana,*
936 F.2d 1027 (9th Cir. 1990) ........................................................ 15, 16

*St. Mary's Honor Center v. Hicks,*
509 U.S. 502 (1993) ......................................................................... 12

*State Farm Fire and Cas. Co. v. Geary,*
699 F.Supp. 756 (N.D. Cal. 1987) ............................................. 10, 11, 18

*Stegall v. Citadel Broadcasting Co.,*
350 F.3d 1061 (9th Cir. 2003) ........................................................ 13, 20

*Texas Dept. of Community Affairs v. Burdine,*
450 U.S. 248 (1981) ......................................................................... 11

*Trujillo v. North County Transit Dist.,*
63 Cal.App.4th 280 (1998) .............................................................. 22

*Vasquez v. County of Los Angeles,*
(9th Cir. 2003) 349 F.3d 634 ................................................ 14, 15, 16, 17

*Yanowitz v. L'Oreal USA, Inc.,*
36 Cal.4th 1028 (2005) ................................................................... 19

Statutes

California Government Code, section 810.8 ...................................... 22
California Government Code, section 811.2 ...................................... 22
California Government Code, section 911.2(a) .................................. 22
California Government Code, section 12940(k) ................................. 21

Rules

Federal Rule of Civil Procedure, Rule 56 ......................................... 10

Other Authorities

California Civil Jury Instructions (CACI) 2527 .............................. 21, 22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY AND ELVIA RAMIREZ'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

# I.    **INTRODUCTION**

This is an employment action brought by Plaintiff BOOKER COOK against Defendants BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY[1] and ELVIA RAMIREZ. Plaintiff asserts seven claims: (1) Racial Discrimination/Harassment under Title VII; (2) Racial Discrimination/Harassment under the Fair Employment and Housing Act ("FEHA"); (3) Failure to Prevent Racial Discrimination and Harassment under FEHA; (4) Age Discrimination/Retaliation under FEHA; (5) Age Harassment under FEHA (6) Failure to Prevent Age Discrimination/Harassment under FEHA; and (7) Negligent Hiring, Supervision, Training and Retention. None of these claims are viable.

Plaintiff, a lecturer at California State University, Sacramento ("CSUS"), is an African American over the age of 40. His discrimination claims arise from a search committee's decision in 2021 to not select Plaintiff for interview for a tenure track faculty position at CSUS for the Pan African Studies ("PAS") program. Plaintiff alleges Defendant Elvia Ramirez, a tenured professor at CSUS, harbors discriminatory animus towards African Americans and older faculty and that she was behind the search committee's decision to not select him for interview. Plaintiff ignores the fact that the two successful candidates that were hired for the position are African American. This fact alone dooms his race discrimination claim.

Further, Plaintiff's age discrimination claim is premised entirely on speculation. He has no personal knowledge as to how the search committee chose the successful candidates and simply assumes that Ramirez *must* have influenced the search committee to not select him. There is no evidence in the record to support this speculative theory. Instead, the undisputed evidence shows that, although Plaintiff was qualified for the position, he was eclipsed by the two successful candidates in several categories the search committee considered. Further, the undisputed material facts show that the search committee selected the successful candidates as a group with no single committee member holding any decision-making power over the others. There is simply no evidence to support Plaintiff's allegation that Ramirez spearheaded the search committee's decision to not interview him for the 2021 PAS position because of his age or his race, nor is there any evidence whatsoever to suggest that the other members of the search committee harbor any discriminatory animus against African Americans or people over the age of 40.

---

[1] The Board of Trustees of the California State University ("CSU") is the State of California acting in its higher education capacity.  California State University, Sacramento ("CSUS") is a campus of the CSU.

Plaintiff also alleges he experienced race and age-based harassment from Ramirez from approximately 2017-2021. However, none of the alleged conduct give rise to a severe or pervasive hostile work environment and, as a result, Plaintiff's harassment claims under Title VII and FEHA are subject to dismissal at the summary judgment stage.

Plaintiff also claims he was subjected to retaliation in that he was not selected for the 2021 PAS position allegedly because he previously made complaints about Ramirez. However, it is undisputed that Ramirez did not know about <u>any</u> of the complaints. Thus, even if Plaintiff could establish a question of fact as to whether Ramirez influenced the decision not to interview him for the position, his claim would still fail because there is no evidence the decision had anything to do with his protected activity.

Accordingly, because Plaintiff's separate claims for discrimination, retaliation, and harassment cannot survive summary judgment, Plaintiff's claim for failure to prevent also fails as a matter of law.

Finally, Plaintiff's claim for negligent hiring and supervision is barred because California State University ("CSU") is a public entity, and Plaintiff failed to timely file a government tort claim.

Therefore, Defendants respectfully request the Court grant summary judgment, or in the alternative, partial summary judgment.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Employment History

Plaintiff is 75 years old. (Undisputed Material Fact[2] ("UMF") 1.) He identifies as African American. (UMF 2.) Plaintiff began his employment with CSUS on August 23, 2017 as a lecturer in the Ethnic Studies Department ("ES Department"). (UMF 3.) He has maintained that position to date. (UMF 4.) The ES Department is part of CSUS' College of Social Sciences and Interdisciplinary Studies ("College") which includes several programs including Pan African Studies and Chicanx/Latinx Studies. (UMF 5.)

### B.    Defendant Elvia Ramirez

Defendant Dr. Elvia Ramirez identifies as Hispanic. (UMF 6.) Ramirez is a tenured professor in the Ethnic Studies Department in the Chicanx/Latinx Studies program. (UMF 7.) She has held that position since 2015. (UMF 8.)

---

[2] Pursuant to Judge Callabretta's Scheduling Order [ECF 11], Defendants filed a Joint Statement of Undisputed Material Facts with their Motion. Those facts are identified as UMFs for the purposes of this motion.

{4890-0619-2083}                                                                2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY AND ELVIA RAMIREZ'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## C. Plaintiff's Harassment Allegations

Plaintiff claims that Ramirez harassed Plaintiff because of his race and age. (UMF 9.) In support of his claim, Plaintiff identifies several instances of alleged harassing conduct as outlined below.

### 1. Ramirez is "cold and cruel" at 2017 CFA Meeting

Shortly after Plaintiff was hired in the ES Department, he attended a faculty meeting. (UMF 10.) Ramirez was present at the meeting. (UMF 11.) During the meeting, Plaintiff was asked to introduce himself. (UMF 12.) Plaintiff introduced himself as a new lecturer in the ES Department. (UMF 13.) Plaintiff claims that Ramirez was "distant," "cold," and "cruel" in her attitude. (UMF 14.) Plaintiff perceived Ramirez as "cold and cruel" because when it was Ramirez's turn to introduce herself, she didn't say "welcome." (Disputed Material Fact[3] ("DMF") 15.) Instead, Ramirez simply "said her name and where she worked." (DMF 16.) This was the first incident of Ramirez's alleged harassing conduct. (DMF 17.)

### 2. Ramirez's November 2018 Discriminatory Comment

Plaintiff attended a faculty meeting in November of 2018. (DMF 18.) At that meeting, Plaintiff alleges that he overheard Ramirez tell Dr. Boatamo Mosupyoe, "why did you hire that old Black man as a lecturer? He does not represent the student body." (DMF 19.) In 2018, Dr. Mosupyoe was the Associate Dean of the College. (DMF 20.) Dr. Mosupyoe identifies as African American. (UMF 21.) This was the only time Plaintiff heard Ramirez make this comment. (DMF 22.) This is the only comment Plaintiff alleges constituted harassment based on his age. (DMF 23.)

No faculty member has made a complaint to Plaintiff about Ramirez's treatment of African Americans. (DMF 24.) Plaintiff has never heard Ramirez make disparaging comments about African American lecturers or professors. (DMF 25.) Plaintiff has never heard of anyone making a complaint against Ramirez because of her mistreatment of anyone based on age. (DMF 26.)

### 3. October 30, 2020 Email Incident

Plaintiff believes that Ramirez attempted to get him reprimanded by the ES Department and "cast him in a negative light." (UMF 27.) To support his claim, Plaintiff described an incident where he attended

---

[3] Defendants also filed its Separate Statement of Material Facts which identifies those facts which Plaintiff disputes. Defendant <u>does not</u> agree that the DMFs are in dispute, but instead identifies these facts as such only for ease of reference for the Court.

a state Ethnic Studies Council meeting to discuss the implementation of AB 1460[4] across CSU campuses. (UMF 28.) However, during the meeting a debate ensued. (DMF 30.) This caused Plaintiff to believe that there was divisiveness within the ES Departments across the CSU system which caused him to write a letter calling for unity. (DMF 31.) Plaintiff emailed his letter to everyone who attended the ES Council meeting, including Ramirez. (DMF 32.)

Ramirez was unsure why she received the letter from Plaintiff. (DMF 33.) That same day, Ramirez forwarded the email and attached letter to the ES full-time faculty and lecturers at CSUS. (DMF 34.) Ramirez stated in her email that she was "taken aback by [Plaintiff's] message" and suggested "maybe" having a "department conversation about [it.]" (DMF 35.) Dr. Reed clarified that Plaintiff had sent the letter to the "Ethnic Studies Council as a whole, not specifically to [their CSUS ES Department] faculty." (DMF 36.) Ramirez responded that same day and thanked Dr. Reed for the clarification. (DMF 37.) Ramirez also explained that she was "taken aback by Booker's message because in his letter, he targets Mexican American faculty, specifically." (DMF 38.) Ramirez concluded her email stating, "let's move forward constructively and collegially as a Department. Though the Council is experiencing 'chaos,' I think our department is doing incredibly well and moving forward strong and collaboratively. Everyone has been pitching in with AB 1460 work, and that's exciting!" (DMF 39.)

Plaintiff never received any discipline for sending the October 30, 2020 letter. (DMF 40.) Plaintiff has "no idea" if anyone in the ES Department viewed him differently because of Ramirez's October 30, 2020 email. (DMF 41.)

### 4. *Ramirez Shuts Her Door When Black People Come Around*

When Plaintiff began his employment, his office was next to Ramirez's office. (UMF 42.) Plaintiff claims that Ramirez's office door would be open when he arrived, but she would close her door sometime after he arrived. (UMF 43.) He does not know how long it would take her to close her door after he arrived. (DMF 44.) Plaintiff never talked to Ramirez about the reason why her door was closed. (DMF 45.) Plaintiff claims that he did not "know at first" why Ramirez closed her door when he came to the office. (DMF 46.) However, in 2017 or 2018, Anne Thomas, then-Administrative Support Coordinator, told Plaintiff that

---

[4] In August of 2020, California Assembly Bill 1460 ("AB 1460") was passed requiring California State University graduates to take one 3-unit Ethnic Studies course to graduate. (UMF 29.)

Ramirez always closes her door when Black people come around. (Index of Exhibits ("IOE"), Ex. F, Excerpts from the Deposition of Plaintiff Booker Cook ("Plaintiff's Depo."), 44:12-45:15; IOE, Ex. A, Declaration of David Norton ("Norton Decl."), ¶ 2.) Thomas is the only person Plaintiff can remember telling him that Ramirez closes her door when Black people come around. (DMF 47.)

Anne Thomas claims she has witnessed Ramirez close her door when African American faculty is nearby. (IOE, Ex. K, Excerpts from the Deposition of Annie Thomas ("Thomas Depo."), 15:16-16:4; IOE, Ex. A, Norton Decl., ¶ 5.) To support this, Thomas provided an example where two African American faculty were talking in an office facing Ramirez's office and Ramirez got up and closed the door. (IOE, Ex. K, Thomas Depo., 17:2-18:16.; IOE, Ex. A, Norton Decl., ¶ 5.) However, Ms. Thomas acknowledged that Ramirez would also close her door when faculty of other races were around. (IOE, Ex. K, Thomas Depo., 18:17-20:13; IOE, Ex. A, Norton Decl., ¶ 5.) Thomas never heard Ramirez make any disparaging racial comments. (IOE, Ex. K, Thomas Depo., 27:11-15; IOE, Ex. A, Norton Decl., ¶ 5.)

### 5. *Ramirez's Conduct Towards African Americans During Faculty Meetings*

Plaintiff claims that Ramirez is "constantly saying things in meetings against Black people and the Pan-African Studies Program." (UMF 48.) In support of his claim, Plaintiff alleges that Ramirez would refer to Plaintiff as a Pan-African studies hire when he is an Ethnic Studies hire. (UMF 49.) Plaintiff also claims Ramirez complains the Pan African Studies Program gets more hires than her Program which is Chicanx/Latinx Studies. (UMF 50.) Plaintiff also alleges that Ramirez says in faculty meetings "why do we keep hiring all these Black people?" (DMF 51.)

## D. Plaintiff's November 3, 2020 and February 1, 2021 Title IX Complaints

On November 3, 2020, Plaintiff filed a complaint against Ramirez with CSUS' Office for Equal Opportunity ("OEO") complaining Ramirez was discriminating against him and harassing him because of his race and age. (UMF 53.) On or about November 12, 2020, then-Title IX Coordinator, Skip Bishop, informed Plaintiff that he needed to provide more detail for the OEO to provide a response. (IOE, Ex. F, Plaintiff's Depo, 110:21-111:10, Exhibit 5 thereto; IOE, Ex. A, Norton Decl. ¶ 2.)

Plaintiff submitted an updated complaint against Ramirez with OEO on February 1, 2021. (UMF 54.) On March 2, 2021, Bishop informed Plaintiff that "taking [his] allegations as true, the allegations [did] not state a discrimination or harassment claim under Executive Order 1096." (DMF 55.) Bishop further informed

Plaintiff that his allegations did not allege "conduct that is sufficiently severe, persistent, or pervasive enough to constitute a hostile work environment." (DMF 56.)

Ramirez was not aware that Plaintiff filed either his November 3, 2020 or February 1, 2021 complaints against her until December 10, 2021, well after the completion of the search committee process. (DMFs 57-58.)

**E.    2021 PAS Position Hiring Process**

In response to AB 1460, the ES Department announced that it would be hiring a tenure-track faculty position for the PAS Program. (DMF 59.) A search committee was formed to locate and hire faculty for the 2021 PAS position. (UMF 60.)

*1.    2021 PAS Search Committee Is Created*

In January of 2021, a five-member search committee was formed. (UMF 61.)  The original five members on the committee were: search committee Chair, Dr. Ricky Green (PAS Program); Dr. Andrea Moore (PAS Program), Dr. Brian Baker (Native American Studies Program), Dr. Julie Figueroa (Chicanx/Latinx Studies Program) and Dr. Annette Reed (Chair of the ES Department). (UMF 62.) The original five committee members created the 2021 PAS posting. (DMF 63.) The original five members also created the screening criteria for the position. (DMF 64.) The screening criteria were used by the search committee to evaluate and rank the candidates and to ensure all required and preferred qualifications were considered and appropriately evaluated. (DMF 65.) Ramirez did not participate in creating the job posting or creating the screening criteria. (DMFs 66-67.)

Sometime after the posting and screening criteria were created, Ramirez learned that Julie Figueroa could not serve on the committee. (DMF 68.) However, for inclusivity, it is standard ES Department practice for a search committee to have representation from all four programs in the ES Department. (DMF 69.) After voicing her concern to the ES Department that Figueroa's absence would leave the Chicanx/Latinx Studies program without representation on the PAS search committee, Ramirez was voted onto the search committee. (DMF 70.) Prior to joining the PAS search committee, Ramirez was unaware that Plaintiff intended on applying to the position. (DMF 71.)

*2.    2021 PAS Job Posting*

The 2021 PAS posting identified the minimum qualifications for the position. (DMF 72.) Plaintiff

met the minimum qualifications. (DMF 73.)

The 2021 PAS posting also identified the preferred qualifications. (DMF 74.) The preferred candidate had "critical pedagogies and scholarships that reflect the evolution of the discipline of Pan African Studies/Ethnic Studies." (DMF 75.)

### 3. Candidate Applications Are Submitted and Reviewed

Each committee member had access to all applicant's CVs, cover letters, teaching statements, and teaching evaluations. (DMF 76.) As a group, the committee decided that each committee member would fill out the screening criteria for each candidate, and then share their "top list" of candidates at a March 2021 Zoom meeting. (DMF 77.) Plaintiff applied for the 2021 PAS position on February 25, 2021, and submitted his CV with his application. (DMF 78.) Prior to applying, Plaintiff did not tell anyone in the ES Department that he intended to apply for the position. (DMF 79.)

At the meeting, the committee tallied the votes and deliberated as a group to decide who would be on the "short list" of candidates they wanted to interview. (DMF 80.) The committee then tallied the number of times each candidate appeared on each respective committee member's top lists. (DMF 81.) Being on multiple lists was a consideration but not a deciding factor in determining who would be interviewed. (DMF 82.) The search committee collectively decided to interview the top candidates that made it onto the "short list." (DMF 83.)

Ramirez's top list included ten candidates, two of whom were ultimately hired for the position. (DMF 84.) Plaintiff was not on Ramirez's top list. (DMF 85.) Plaintiff was not on Ramirez's top list because, based on her use of the screening criteria, she felt he had "very little academic conference presentations [and] scholarship." (DMF 86.) Out of a possible total score of 16 (rated in seven categories), Ramirez's total rating for the preferred qualifications for Plaintiff was "8." (DMF 87.) Ramirez's total ratings for preferred qualifications for the two successful candidates, Dr. Clarence George, III and Dr. Martin Boston, were "11" and "14" respectively. (DMF 88.)

Dr. Baker had Plaintiff on his respective top list. (DMF 89.) Dr. Baker and Ramirez believed Plaintiff was qualified for the position. (DMFs 90-91.) However, the candidates that were selected had a Ph.D. in either African Studies or Ethnic Studies. (DMF 92.) Plaintiff did not have an Ethnic Studies or African Studies Ph.D. (DMF 93.) Instead, Plaintiff had an Ed.D. (DMF 94.) Additionally, the search committee was

looking for a candidate with a strong background reflecting peer reviewed publications or presentations at academic conferences or fellowships. (DMF 95.)

Dr. Baker does not recall Ramirez saying anything, negative or otherwise, about Plaintiff or his application during the search process, including the March 2021 Zoom meeting. (DMF 97.) Likewise, he does not recall Ramirez saying anything regarding race or age during the search process, including the March 2021 Zoom meeting. (DMF 98.) Ramirez did not influence Dr Baker's decision to not select Plaintiff to be interviewed for the 2021 PAS position. (DMF 99.) Dr. Baker believes that the search was conducted fairly and equitably. (DMF 100.) The committee made the decision as a group on which candidates to advance to the interview process. (DMF 101.) As such, no single committee member had final decision-making power over the search committee's decision as to who to advance to the interview process. (DMF 102.)

Dianne Hyson has been the Dean for the College since June of 2019. (DMF 103.) As the Dean, she is responsible for managing the search committee processes that occur within the College. (DMF 104.) On March 8, 2021, Dr. Ricky Green emailed Dean Hyson informing her that the search committee had completed its preliminary assessment of the candidates and identified five candidates for interview, including Dr. Martin Boston and Dr. Clarence George, III. (DMF 105.)

### 4. *"Short List" Candidates Are Interviewed*

After Dean Hyson approved the "short list" of candidates the search committee wished to interview, the search committee and Dean Hyson conducted interviews of those candidates. (DMF 106.) On April 9, 2021, after the interviews were conducted, Dr. Green emailed Dean Hyson confirming that the search committee had completed its assessment of the candidates and was recommending four candidates, in order of preference, for hire including Dr. Boston and Dr. George. (DMF 107.)

### 5. *Successful Candidates*

Ultimately, the two successful candidates for the 2021 PAS tenure-track faculty position were Dr. George, III and Dr. Boston. (DMFs 108-109.) Dr. Boston applied for the 2021 PAS position on February 27, 2021, and submitted his CV with his application. (DMF 110.) Dr. George applied for the 2021 PAS position on February 3, 2021, and submitted his CV with his application. (DMF 111.) Both successful candidates identify as African American. (DMFs 112-113.) Plaintiff, Dr. George, and Dr. Boston all had experience teaching Ethnic Studies courses. (DMFs 114-116.) However, their qualifications differed in three categories:

(1) education and/or dissertation; (2) peer reviewed publications and (3) presentations at academic conferences or fellowships.

For example, at the time he applied, Plaintiff had an Ed.D. in Educational Leadership and Policy. (DMF 117.) Whereas Dr. George had a Ph.D. in African American/African Studies and Dr. Boston had a Ph.D. in Ethnic Studies. (DMFs 1118-119.)

Additionally, there was a stark difference between the publications and conference presentations identified in Plaintiff's CV compared to those in Dr. George's and Dr. Boston's respective CVs. The journal articles, conference papers, and presentations identified in Plaintiff's CV are Education focused whereas Dr. George's and Dr. Boston's are African studies focused. (DMF 120.)

**F.    Plaintiff's August 23, 2021 OEO Complaint**

On August 23, 2021, after learning he was not selected for the 2021 PAS position, Plaintiff filed another OEO Complaint against Ramirez. (UMF 121.) The complaint alleged that Ramirez "played a substantial role" in Plaintiff not being interviewed for the 2021 PAS Position. (UMF 122.)

Plaintiff believes that Ramirez wanted to join the search committee specifically so Plaintiff would not be hired for the position. (DMF 123.) However, Plaintiff does not believe that Ramirez joined the search committee so no African American could be hired for the position because "all African Americans applied" and Ramirez "didn't care about that." (DMF 124.) Instead, Plaintiff believes that Ramirez was "concerned to make sure that [Plaintiff] didn't succeed." (DMF 125.)

Plaintiff believes that Ramirez influenced the search committee to not select Plaintiff for an interview. (DMF 126.) He believes this because the search committee did not select him for an interview. (DMF 127.) However, Plaintiff also admits that he has "no way of knowing" if he would have received the position over either Dr. Clarence George or Dr. Boston if he had been selected for interview. (DMF 128.) Further, Plaintiff has "no idea" what the search committee's internal discussions were about or what they were looking for in a candidate for the 2021 PAS position. (DMF 129.)

**G.    Procedural History**

Plaintiff filed his operative complaint on June 16, 2023. (IOE, Ex. G, Plaintiff's Second Amended Complaint ("SAC"); Request for Judicial Notice, ("RFJN"), ¶ 1.) Plaintiff's Seventh Claim for Relief alleges a claim for Negligent Hiring, Supervision, Training. *Id.* However, as the State of California acting in its

higher education capacity, CSU is a public entity, and Plaintiff failed to file a government tort claim. (DMFs 130-131.)

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure, Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587. Upon a showing that there is no genuine dispute of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor on "each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a); *Beal Bank, SSB v. Pittorino*, 177 F3d 65, 68 (1st Cir. 1999).

"[P]artial summary judgment 'upon all or any part of [a] claim,' is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim." Fed. R. Civ. P. 56(a); *Hermosillo v. County of Orange*, 562 F.Supp.3d 802, 809 (C.D. Cal. 2021). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire and Cas. Co. v. Geary,* 699 F.Supp. 756, 759 (N.D. Cal. 1987). As such, where a plaintiff combines distinct claims into a single claim for relief, the Court can adjudicate the distinct claims separately. *Cummings v. Starbucks Corp.,* No. CV1206345MWFFFMX, 2013 WL 12131281, at *2 (C.D. Cal., Aug. 30, 2013)

### IV. ARGUMENT

#### A. Plaintiff's First Claim for Relief Fails as a Matter of Law Under Title VII

Plaintiff's First Claim for Relief is asserted against Defendant BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY (Defendant "CSU") only. Plaintiff asserts two theories of liability against Defendant CSU under Title VII: race discrimination and harassment. To limit the claims at trial, this

Court has discretion to grant summary judgment as to Plaintiff's First Claim for Relief in its entirety or partial summary judgment as to either theory of liability. *Hermosillo,* 562 F.Supp.3d at 809; *State Farm,* 699 F.Supp. at 759; *Cummings*, 2013 WL 12131281, at *2.

### 1. Plaintiff's First Claim for Relief for Racial Discrimination Fails as a Matter of Law

To establish a *prima facie* case of race discrimination under Title VII, "a plaintiff must provide evidence that give[s] rise to an inference of unlawful discrimination." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002). The applicable legal framework for considering claims of race discrimination on a summary judgment motion is the burden-shifting test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Chuang v. University of California Davis, Bd. of Trustees,* 225 F.3d 1115, 1123 (9th Cir. 2000).

Under the *McDonnell Douglas* test, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. If Plaintiff can establish a *prima facie* claim, the burden shifts to the employer to show "that its action was taken for a legitimate, nondiscriminatory reason." *Id.* If the employer sustains its burden, the presumption of discrimination disappears, and the burden will shift back to plaintiff to demonstrate "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981).

Plaintiff alleges he was not selected for the 2021 PAS position because of his race. (IOE, Ex. G, SAC, ¶ 31; RFJN, ¶ 1; IOE, Ex. H, Plaintiff's Response to Defendant Elvia Ramirez's Request for Form Interrogatories – Employment, Set One, No. 202.1; IOE, Ex. A, Norton Decl. ¶ 3.) Plaintiff's race discrimination claim fails as a matter of law for several reasons. First, Plaintiff cannot establish his *prima facie* claim because he cannot establish similarly situated individuals outside his protected class were treated more favorably. Even assuming he can meet this initial burden, Plaintiff's claim fails because Defendant CSU can establish that Plaintiff was not interviewed for the 2021 PAS position for legitimate, non-discriminatory business reasons and Plaintiff cannot show pretext.

### a. Plaintiff Cannot Establish a Prima Facie Claim for Racial Discrimination

To establish a discrimination claim under Title VII, the plaintiff must show that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang,* 225 F.3d at 1123. Here, Plaintiff cannot establish that similarly situated individuals outside his protected class

were treated more favorably.

Plaintiff identifies as African American. (UMF 2.) The undisputed material facts show that the two successful candidates for the position were Dr. Clarence George, III and Dr. Martin Boston (DMFs 108-109.) Both Dr. George and Dr. Boston identify as African American. (DMFs 112-113.) These undisputed material facts demonstrate that Plaintiff cannot establish the fourth element of his claim. Therefore, Plaintiff cannot establish his *prima facie* claim for racial discrimination.

### b. *Defendant CSU Can Establish that Plaintiff Was Not Selected for the 2021 PAS Position for Legitimate, Non-Discriminatory Reasons*

Even if Plaintiff could meet his *prima facie* burden, his First Claim for Relief still fails because Defendant CSU can establish Plaintiff was not interviewed for the 2021 PAS position for legitimate, non-discriminatory reasons. To meet their burden, Defendant CSU "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

Here, Defendant CSU can set forth admissible evidence which establishes its reasons for interviewing and ultimately hiring the successful candidates over Plaintiff were legitimate and nondiscriminatory. First, it is undisputed that Plaintiff was qualified for the 2021 PAS position (DMFs 72-73 and 90-91.) However, the preferred candidate had "critical pedagogies and scholarships that reflect the evolution of the discipline of Pan African Studies/Ethnic Studies." (DMFs 74-75.) Plaintiff did not have a doctorate in either Ethnic Studies or Pan African Studies. (DMF 93.) Instead, Plaintiff had his doctorate in Education. (DMF 117.) The successful candidates, however, had a Ph.D. in either African Studies or Ethnic Studies. (DMFs 92, 118-119.) Additionally, the search committee was looking for a candidate with peer reviewed publications or presentations at academic conferences or fellowships (DMFs 85-86 and 95.) As outlined in both Dr. George's and Dr. Boston's respective CVs, both candidates had a strong background reflecting peer reviewed publications and/or presentations with a focus in the African Diaspora. (DMFs 76, 78, 84, 95, 110-111, and 120.) Plaintiff did not. (DMF 78.) These undisputed material facts demonstrate that there was a clear, non-discriminatory choice between selecting Plaintiff or selecting the two successful candidates.

/ / /

### c. *Plaintiff Cannot Establish Pretext*

Once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, the plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). The plaintiff may show pretext by showing either "(1) that unlawful discrimination more likely motivated the employer, or (2) that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). Where the evidence of pretext is circumstantial, rather than direct, the evidence must be "specific" and "substantial" to create a triable issue with respect to whether the employer intended to discriminate on an improper basis. *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1066 (9th Cir. 2003). Here, Plaintiff can make no such showing.

Plaintiff claims that Ramirez did not put him on her top list because of his race which resulted in him not getting the 2021 PAS position. (IOE, Ex. H, Plaintiff's Response to Defendant Elvia Ramirez's Request for Form Interrogatories – Employment, Set One, No. 202.1, IOE, Ex. A, Norton Decl., ¶ 3.) There is no evidence to support this. Instead, the undisputed material facts show that Dr. George and Dr. Boston are African American, and both were on Ramirez's top list after receiving sufficient ranking through her use of the screening criteria. (DMFs 84, 87-88, and 112-113.) Additionally, Plaintiff acknowledge at his deposition that he does not believe Ramirez joined the search committee so no African American could be hired for the position because "she didn't care about that." (DMFs 123-124.) Instead, Plaintiff believes that Ramirez was "concerned to make sure that *[Plaintiff]* didn't succeed." (DMF 125.) Further, even taking all Plaintiff's allegations as true that Ramirez harbored racial animosity towards him and did not include him on her top list for that reason, Plaintiff can set forth no admissible evidence establishing that Ramirez had any influence over the search committee's collective decision to not interview him for the 2021 PAS position. (DMFs 97-102.) As such, these undisputed material facts negate any theory that race was a factor in determining who to interview or who the successful candidate was. Therefore, Plaintiff cannot set forth any admissible evidence to establish that "unlawful discrimination more likely motivated" the search committee to select the successful candidates over Plaintiff. *Dominguez-Curry,* 424 F.3d at 1037. (DMFs 24-26.)

Therefore, because Plaintiff cannot establish pretext, his First Claim for Relief fails.

**2.** ***Plaintiff's First Claim for Relief for Racial Harassment Fails as a Matter of Law Under Title VII***

To establish a harassment claim under Title VII, a plaintiff must show that "(1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment." *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003).

To establish severe or pervasive conduct, "[a] plaintiff must show that the work environment was both subjectively and objectively hostile." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). Subjective hostility is established where the plaintiff subjectively perceives the conduct to be abusive. *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 873 (9th Cir. 2001). In evaluating objective hostility, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest*, 360 F.3d at 1113. The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).[5] As such, it is well established that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Id*.

Here, Plaintiff alleges that he was subjected to harassment because of his race. He identifies five allegations of harassment as follows:

_Allegation One:_ In approximately 2017, shortly after Plaintiff was hired, Ramirez was "cold and cruel" to him at a faculty meeting. (UMFs 10-14). Plaintiff perceived Ramirez to be cold and cruel because Ramirez did not say "welcome" to him at a faculty meeting. (DMF 15.) Instead, she simply "said her name and where she worked." (DMF 16.) This was the first instance of Ramirez's alleged harassing conduct. (DMF 17.)

---

[5] "Because the elements to prove a hostile work environment are the same for both racial harassment and sexual harassment, cases analyzing both types of harassment are relevant to our analysis." *Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634, 642.

*Allegation Two:* In November of 2018 Plaintiff allegedly heard Ramirez say to African American faculty member Boatamo Mosupyoe, "why did you hire that old Black man as a lecturer? He does not represent the student body." (DMFs 18-20 and UMF 21.)

*Allegation Three:* On or about October 23, 2020, Ramirez allegedly attempted to get Plaintiff reprimanded by the ES Department and "to cast him in a negative light." (UMFs 27-29 and DMFs 30-39.)

*Allegation Four:* Ramirez would shut her door allegedly when Black people came around. (UMFs 42-43 and DMFs 44-46.)

*Allegation Five:* Ramirez is "constantly saying things in meetings against Black people and the Pan-African Studies Program." (UMF 48.) In support of his claim, Plaintiff alleges that Ramirez would refer to Plaintiff as a Pan-African studies hire when he is an Ethnic Studies hire. (UMF 49.) Ramirez also complains that the Pan African Studies Program is getting more hires than her Program (Chicanx/Latinx Studies Program). (UMF 50.) Plaintiff also alleges that Ramirez constantly says in faculty meetings "why do we keep hiring all these Black people?" (DMF 51.)

Even assuming for purposes of this Motion that Plaintiff was subjectively offended by the alleged conduct, when compared to other hostile work environment cases, the events alleged here are simply not severe or pervasive to establish that the conduct was objectively hostile. *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003) is illustrative on this issue.

In *Vasquez*, the Ninth Circuit found no harassment where: (1) plaintiff alleged continuous harassment but only provided specific factual allegations regarding "a few incidents"; (2) supervisor made two comments (more than six months apart) that the plaintiff had a "typical Hispanic macho attitude" and that "Hispanics do good in the field"; "(3) supervisor yelled at plaintiff in front of others but plaintiff only cited two separate occasions; (4) plaintiff alleged that supervisor made negative remarks about him in front of others, but plaintiff had no personal knowledge of the alleged negative remarks; and (5) supervisor allegedly made two false complaints against plaintiff with the false complaints made more than one year apart. *Id.* at 642–644.

In coming to its decision, *Vasquez* cited another Ninth Circuit case, *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990). In *Sanchez*, the Ninth Circuit found no harassment "despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino

officers, and kept illegal personnel files on plaintiffs because they were Latino." *Vasquez,* 349 F.3d at 643. In applying *Sanchez*, the *Vasquez* Court stated, "that the allegations in *Sanchez* were at least as severe as those [in *Vasquez*], yet the court held as a matter of law that there was no hostile work environment. *Id.*

*Vasquez* also cited *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), another instructive Ninth Circuit case. In *Kortan*, the Ninth Circuit found no harassment where: (1) a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; (2) the supervisor called the plaintiff "Medea"; (3) the plaintiff complained about other difficulties with that supervisor; and (4) the plaintiff received letters at home from the supervisor. *Id.* at 643–644. In applying *Kortan*, the *Vasquez* court stated, "while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment." *Id.* at 644.

Here, even when "looking at all the circumstances," the alleged harassment is less frequent, less severe, and less humiliating than the conduct at issue in *Vasquez*, *Sanchez,* and *Kortan.*

First, the conduct is sporadic and not frequent. Allegations One through Three occurred, at minimum, a year a part and only occurred <u>once</u>. (UMFs 10-14, 21, 27-29 and DMFs 15-20, 22, 30-34.) Additionally, Allegation Four occurred at unspecified times and for reasons that are entirely speculative, as Plaintiff is unaware as to when or why Ramirez closed her door when he was around. (DMFs 44-45.) It is well established that "harassment is not sufficiently severe or pervasive to establish a hostile work environment where the conduct at issue consists of limited or isolated behavior." *Mattioda v. Nelson*, 98 F.4th 1164, 1177 (9th Cir. 2024). As such, to survive summary judgment, Plaintiff must set forth admissible evidence showing "a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Lyle v. Warner Brothers Television Productions*, 38 Cal.4th 264, 283 (2006). Plaintiff can make no such showing. Therefore, the infrequency of the alleged conduct tips the analysis towards a finding of no harassment.

Further, the alleged conduct is certainly less severe than the conduct alleged in *Vasquez*, *Sanchez*, and *Kortan*. Plaintiff's allegation that Ramirez failed to say "welcome" to him at a faculty meeting (DMF 15); incorrectly identified him as PAS faculty; and called him an "old, Black man" (DMFs 18-19 and 49) is a far cry from a supervisor calling his subordinate a "castrating bitch." *Kortan,* 217 F.3d at 1110-1111. Instead, Ramirez's alleged comments are even less severe than the alleged comments in *Vasquez,* 349 F.3d at 643 (supervisor told plaintiff he had a "typical Hispanic macho attitude" and "Hispanics do good in the

field"). Nevertheless, while the *Vasquez* comments were determined to be offensive, they did not rise to a level of harassment under Title VII. The same conclusion can be drawn here. While calling another faculty member an "old, Black man" and asking why the ES Department "is hiring all these Black people" may be offensive, the comments are not "physically threatening" or "humiliating" and do not constitute severe or pervasive conduct. *Faragher*, 524 U.S. at 787. Therefore, because the alleged conduct does not rise to the level of severity necessary to establish an objectively hostile work environment, the analysis tips further towards a finding of no harassment.

Finally, Plaintiff can set forth no admissible evidence showing that the alleged conduct has "unreasonably interfered with his work performance." *Faragher*, 524 U.S. at 788. As discussed under section IV.A.1. above, Plaintiff cannot establish that he did not receive the 2021 PAS position because of Ramirez's discriminatory conduct. (UMF 2 and DMFs 24-26, 72-76, 78, 84-88, 90-93, 95, 97, 102, 108-113, 117-119, 120, 123-125.) Likewise, Plaintiff's claim that Ramirez sent an email to the ES Department on October 23, 2020 to "cast him in a negative light" likewise did not unreasonably interfere with his work performance. Indeed, Plaintiff acknowledged that he never received any discipline for sending the October 30, 2020 letter and that he has "no idea" if anyone in the ES Department viewed him differently because of Ramirez's October 30, 2020 email. (DMFs 40-41.) Additionally, Plaintiff's allegations that Ramirez was "cold" and "cruel" to him at a faculty meeting (UMFs 10-14 and DMFs 15-16); that she called him an "old, Black man" (DMFs18-19); asked "why do we keep hiring all these Black people?" (DMF 51); and that she shut her door when Black people came around (UMFs 42-43 and DMFs 44-46.) have not unreasonably interfered with his work performance. Plaintiff can offer no admissible evidence to the contrary.

Even in viewing the allegations in a light most favorable to Plaintiff, none of the alleged conduct is "sufficiently severe or pervasive [enough] to alter the conditions of [P]laintiff's employment and create an abusive work environment." *Manatt*, 339 F.3d 792, 798. Therefore, because Plaintiff cannot establish his prima facie claim, Plaintiff's First Claim for Relief for race harassment must be dismissed.

**B.** **Plaintiff's Second Claim for Relief Against CSU for FEHA Race Discrimination Fails as a Matter of Law**

Plaintiff's Second Claim for Relief, also only against Defendant CSU, is for race discrimination under FEHA. In support of this claim, Plaintiff alleges he was passed over for the 2021 PAS position because of

his race. (IOE, Ex. G, SAC ¶ 36; RFJN, ¶ 1; IOE, Ex. H, Plaintiff's Response to Defendant Elvia Ramirez's Request for Form Interrogatories – Employment, Set One, No. 202.1, IOE, Ex. A, Norton Decl., ¶ 3.) Like Plaintiff's Title VII discrimination claim, Plaintiff's FEHA discrimination claim has no merit.

The elements of a discrimination claim brought under FEHA mirror the elements of a discrimination claim brought under Title VII. *Pinder v. Employment Development Department*, 227 F.Supp.3d 1123, 1136-1137 (2017). Additionally, California has adopted the *McDonnell Douglas* three-stage burden-shifting test established by the United States Supreme Court for analyzing claims of discrimination at the summary judgment stage. *Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317, 354 (2000), *citing to McDonnell Douglas,* 411 U.S. 792. As such, Plaintiff's FEHA discrimination claim is subject to the same analysis as his Title VII claim.

Therefore, for the same reasons discussed in section IV.A.1. above, Plaintiff cannot establish a claim for race discrimination under FEHA because: (1) he cannot establish his *prima facie* claim (UMF 2 and DMFs 108-109, 112-113); (2) the Defendants can offer admissible evidence establishing legitimate nondiscriminatory reasons for its decision to hire the two successful candidates over Plaintiff (DMFs 72-78, 84-86, 90-93, 95, 110-111, 117-120); and (3) because Plaintiff cannot establish pretext. (DMFs 24-26, 84, 87-88, 97-102, 112-113, 123-125.) Therefore, Plaintiff's Second Claim for Relief is subject to summary judgment.

**C.** **Plaintiff's Fourth Claim for Relief Against Defendant CSU for FEHA Retaliation and Age Discrimination Fails as a Matter of Law**

Plaintiff alleges two separate theories of liability under his Fourth Claim for Relief against Defendant CSU: one for retaliation and one for age discrimination. As discussed above, to narrow the issues at trial, this Court has discretion to grant summary judgment as to Plaintiff's Fourth Claim for Relief in its entirety or partial summary judgment as to either theory of liability. *Hermosillo,* 562 F.Supp.3d at 809; *State Farm,* 699 F.Supp. at 759; *Cummings*, 2013 WL 12131281, at *2.

   *1.* *Plaintiff's Fourth Claim for Relief for Retaliation Fails as a Matter of Law*

Plaintiff's Fourth Claim for Relief against Defendant CSU is for retaliation under FEHA. Plaintiff alleges that Ramirez retaliated against him for complaining against her by joining the search committee to ensure he would not be selected for the 2021 PAS position. (IOE, Ex. G, SAC ¶ 25; RFJN, ¶ 1.) Plaintiff's retaliation claim is subject to the *McDonnell Douglas* test. *Loggins v. Kaiser Permanente Internat.,* 151

Cal.App.4th 1102, 1109 (2007). Plaintiff's retaliation claim fails because he cannot establish a *prima facie* case and, even if he can, Defendants can offer legitimate, non-retaliatory reasons for its decision to not select him for the 2021 PAS position.

To establish a *prima facie* case of retaliation under FEHA, a plaintiff must show "(1) he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1042 (2005). Plaintiff alleges he engaged in protected activity when he complained to the OEO against Ramirez. (IOE, Ex. T, Plaintiff's Response to Defendant Board of Trustees of the California State University's Interrogatories, Set One, No. 11, IOE, Ex. A, Norton Decl., ¶ 6.) Assuming for purposes of this Motion that Plaintiff can satisfy the first two elements, Plaintiff's claim fails as a matter of law because he cannot establish a causal link existed between his protected activity and the search committee's decision to not interview him for the 2021 PAS position.

Here, like Plaintiff's other claims, Plaintiff's retaliation claim is supported only by speculation and conjecture. There is no evidence establishing Ramirez was aware that Plaintiff would apply for the 2021 PAS position, nor is there any evidence that Ramirez became aware at any time during the 2021 search process that Plaintiff filed any of his OEO complaints against her. (UMFs 53-54 and DMFs 57-58, 71, 79.) See *Reeves v. Safeway Stores, Inc.,* 121 Cal.App.4th 95, 107 (2004) ("if a worker's protected activities are completely unknown to his or her employer, no act by the employer can be said to have been taken 'because of' those activities"). Further, Plaintiff can offer no admissible evidence to show that Ramirez joined the search committee to prevent Plaintiff from being selected for the 2021 PAS position or that she was successful in doing so. Instead, the undisputed material facts show: (1) the search committee members respective decisions to not select Plaintiff for an interview were not influenced by Ramirez; (2) Dr. Baker does not recall Ramirez saying anything, negative or otherwise, about Plaintiff; (3) the decision to not interview Plaintiff was made collectively with no one search committee member having decision-making authority over any other; and (4) Plaintiff has no personal knowledge about how the search committee came to its decision to not interview Plaintiff. (DMFs 97-102, 126-129.) Plaintiff can set forth no admissible evidence to the contrary. Therefore, Plaintiff cannot establish his *prima facie* case of retaliation under FEHA. Even if he could, for the reasons set forth under section IV.A.1.b. above, Defendants can offer a legitimate

non-retaliatory reason for its decision to not select Plaintiff for the position and Plaintiff cannot show pretext. (DMFs 72-78, 84-86, 90-93, 95, 110-111, 117-120.) Therefore, Plaintiff's Fourth Claim for Relief is subject to summary judgment.

### 2. *Plaintiff's Claim for Age Discrimination under FEHA Fails as a Matter of Law*

Plaintiff's claim for age discrimination against Defendant CSU is also subject to summary judgment for several reasons. First, Plaintiff cannot establish his *prima facie* claim because he cannot set forth any evidence to suggest an inference of age discrimination with respect to the 2021 PAS position. Even if Plaintiff could establish his *prima facie* claim, his claim still fails because, as discussed above under section IV.A.1.b. above, Defendants can offer admissible evidence establishing legitimate nondiscriminatory reasons for its decision to hire the two successful candidates over Plaintiff. (DMFs 72-78, 84-86, 90-93, 95, 110-111, 117-120.)

Finally, Plaintiff cannot establish pretext. As discussed above, to survive summary judgment, Plaintiff must set forth "specific" and "substantial" evidence to create a triable issue with respect to whether Defendants intended to discriminate on an improper basis. *Stegall,* 350 F.3d at 1066 (9th Cir. 2003). Plaintiff can make no such showing.

Even taking Plaintiff's allegations as true that Ramirez harbored animosity towards older faculty, there is no evidence establishing that Ramirez's alleged animosity had any bearing on the search committee's decision to not select Plaintiff for an interview for the 2021 PAS position. Instead, the undisputed material facts show that: (1) the search committee members respective decisions to not select Plaintiff for an interview were not influenced by Ramirez; (2) Dr. Baker does not recall Ramirez saying anything, negative or otherwise, about Plaintiff; (3) the decision to not interview Plaintiff was made collectively with no one search committee member having decision-making authority over any other; and (4) Plaintiff has no personal knowledge about how the search committee came to its decision not to interview him. (DMFs 97-102, 129.) Plaintiff can set forth no specific and substantial evidence to refute this. Therefore, Plaintiff cannot establish that the search committee's decision to not select him for interview was pretextual.

Therefore, Plaintiff's Fourth Claim for Relief for age discrimination is subject to summary judgment.

/ / /

/ / /

**D.** **Plaintiff's Second Claim for Relief Against Defendant CSU for Race Harassment and Plaintiff's Fifth Claim for Relief Against Both Defendants for Age Harassment Fail as a Matter of Law Under FEHA**

Plaintiff brings his Second Claim for Relief against Defendant CSU, as well as his and Fifth Claim for Relief against both Defendants under FEHA alleging claims for harassment based on his race and age, respectively. In support of his claim, Plaintiff alleges the same conduct alleged to support his Title VII race harassment claim. (IOE, Ex. G, SAC ¶ 36; RFJN, ¶ 1; IOE, Ex. H, Plaintiff's Response to Defendant Elvia Ramirez's Request for Form Interrogatories – Employment, Set One, No. 203.1; IOE, Ex. A, Norton Decl., ¶ 3.)

The elements of a harassment claim brought under FEHA mirror the elements of a harassment claim brought under Title VII. *Pinder* 227 F.Supp.3d at 1143. As such, Plaintiff's FEHA harassment claims are subject to the same analysis as his Title VII claim. Therefore, for the same reasons discussed above under section IV.A.2., Plaintiff cannot establish a claim for race harassment under FEHA because he cannot establish he was subjected to an objectively hostile working environment. Therefore, Plaintiff's Second Claim for Relief for race harassment is subject to summary judgment.

Plaintiff's age harassment claim must likewise fail because he cannot establish he was subjected to a objectively hostile work environment because of his age. Indeed, Plaintiff's claim that Ramirez called him an "old, Black man" is the only comment Plaintiff alleges constituted harassment based on his age. (UMF 1 and DMF 23.) This single, isolated comment certainly does not constitute "a concerted pattern of harassment of a repeated, routine, or a generalized nature" and cannot be said to alter Plaintiff's "terms and conditions of his employment." *Lyle*, 38 Cal.4th at 283; *Faragher*, 524 U.S. at 788. Therefore, Plaintiff's Fifth Claim for Relief for age harassment is subject to summary judgment.

**E.** **Plaintiff's Third and Sixth Claims for Relief Against Defendant CSU for Failure to Prevent Discrimination and Harassment Fail as a Matter of Law Under FEHA**

Plaintiff's Third and Sixth Claims for Relief against Defendant CSU are for Failure to Prevent Discrimination and Harassment under FEHA. Government Code § 12940(k) makes it unlawful "[f]or an employer…to fail to take all reasonable steps necessary to prevent discrimination and harassment…from occurring." To succeed on this claim, Plaintiff must show: (1) he was subject to discrimination; (2) the employer failed to take all reasonable steps to prevent the discrimination from occurring; (3) that plaintiff

was harmed; and (4) that the failure to prevent was a substantial factor in causing the harm. (CACI 2527; *Alamao v. Practice Management Information Corp.*, 219 Cal.App.4th 466, 479 (2013). Plaintiff cannot recover on a failure to prevent discrimination/harassment if the underlying discrimination and harassment claims are not actionable. *Trujillo v. North County Transit Dist.*, 63 Cal.App.4th 280, 289 (1998).

Here, for the reasons discussed under sections IV.A.-IV.D. above, Plaintiff cannot establish a claim for discrimination or harassment. (UMFs 1-14, 21, 27-29, 42-43, 48-50, 53-54, 60-62, 121-122 and DMFs 15-20, 22-26, 30-41, 44-47, 51-52, 55-59, 63-95, 97-120, 123-131.)  Therefore, Plaintiff's failure to prevent discrimination and/or harassment claim is subject to summary judgment.

## F. Plaintiff's Seventh Claim for Relief Against Defendant CSU for Negligent Hiring, Supervision, Training, and Retention Fails as a Matter of Law

Plaintiff also brings a common law claim for negligent hiring, supervision, training, and retention against Defendant CSU. However, "[a]s a prerequisite for filing suit for 'money or damages' against a public entity, the California Government Claim Act requires presentation of a claim to the public entity." *General Sec. Services Corp. v. County of Fresno*, 815 F.Supp.2d 1123, 1131 (E.D. Cal. 2011). Lawsuits that seek monetary relief based on claims sounding in tort are lawsuits for "money or damages." *Id.* "Claims relating to a cause of action for injuries to the person must be presented no later than six months after the accrual of the cause of action. *Id.*; Cal. Gov.Code § 911.2(a). "Injury" means, among other things, "any other injury that a person may suffer to his person, reputation, character, feelings, or estate, of such nature that it would be actionable if inflicted by a private person." *Id.*; Cal. Gov.Code § 810.8. The date of accrual is that which would apply under the statute of limitations if the dispute were between private litigants. *General Sec.*, 815 F.Supp.2d at 1131. "The Government Claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim. [Citation.]" *Id.* at 1132.

Here, the Government Claims Act applies to suits for money or damages against Defendant CSU, *see* Cal. Gov't Code § 811.2 (defining "public entity" as including "the Trustees of the California State University and the California State University"); (DMF 130.) Plaintiff claims that "Defendants failed to recuse RAMIREZ, or otherwise failed to take other reasonable steps to ensure that COOK'S candidacy was not sabotaged by RAMIREZ'S bias against his race and age." (IOE, Ex. G, SAC, ¶ 52; RFJN, ¶ 1.) Plaintiff further claims that "[a]s a direct and proximate result of the Defendants' acts or omissions, [he] suffered

damages including, but not limited to, damage to professional reputation, emotional distress, humiliation, and mental anguish." (IOE, Ex. G, SAC, ¶ 53; RFJN, ¶ 1.) Because Plaintiff is seeking damages against a public entity for injury to his person, he was required to present a government claim within six months after the accrual of the cause of action. *General Sec.*, 815 F.Supp.2d at 1131-32. Plaintiffs' claim accrued as late as August 23, 2021, when he filed his August 2021 OEO Complaint alleging Ramirez joined the 2021 PAS search committee to prevent Plaintiff from being hired for the position. (UMF 121.) As such, Plaintiff was required to file a government claim on or before February 23, 2022. However, Plaintiff did not file a government claim with the CSU prior to February 23, 2022, or at any time up through the present. (DMF 131.) Plaintiff can offer no admissible evidence to the contrary. As a result, Plaintiff's Seventh Claim for Relief is time barred under Government Code section 950.2. Therefore, because Plaintiff failed to file a timely government claim, his Seventh Claim for Relief is barred and subject to summary judgment.

## V.   CONCLUSION

Therefore, based on the foregoing, Defendants request summary judgment, or in the alternative, partial summary judgment, be granted.


Dated: December 12, 2024                    PORTER SCOTT
                                            A PROFESSIONAL CORPORATION


                                            By     */s/ David R. Norton*
                                                   Carl L. Fessenden
                                                   David R. Norton
                                                   Larissa C. Celaya
                                                   Attorneys for Defendants BOARD OF TRUSTEES
                                                   OF CALIFORNIA STATE UNIVERSITY and
                                                   ELVIA RAMIREZ