UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOOKER COOK,<br><br>    Plaintiff,<br><br>    v.<br><br>BOARD OF TRUSTEES OF<br>CALIFORNIA STATE UNIVERSITY, et<br>al.,<br><br>    Defendants. | No. 2:23-cv-00843-DJC-CKD<br><br><br>ORDER |

Plaintiff Booker Cook claims that while he was employed at California State University, Sacramento, he was subject to discrimination, harassment, and retaliation based on his age and race, including when he was not selected to interview for a tenure-track professorship. Defendants now move for summary judgment, arguing that each of Plaintiff's claims fails as a matter of law. (ECF No. 20.)

For the reasons stated below, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

### I.    Undisputed Facts

Plaintiff is an African American man in his 70s who is and was, at all relevant times, employed as a lecturer by the Ethnic Studies Department of California State

University, Sacramento ("CSUS").[1]  (Joint Statement of Undisputed Facts ("JSUF") (ECF

No. 20-2) ¶ 1–4.)  During a 2017 faculty meeting that occurred shortly after Plaintiff

was hired as a lecturer, Plaintiff perceived Defendant Elvia Ramirez, a professor in the

Chicanx/Latinx Studies program of the Ethnic Studies Department who identifies as

Hispanic, as acting "cold and cruel" towards him.  (Response to Defendants' Separate

Statement of Undisputed Facts ("SSUF") (ECF No. 24-1) ¶ 15; JSUF ¶ 6–8.)[2]  Plaintiff

also noted that Defendant Ramirez did not welcome him to the Ethnic Studies

Department.  (*Id.*)  After starting at CSUS, Plaintiff's office was initially next to

Defendant Ramirez's office.  (JSUF ¶ 42.)  During this time, Plaintiff claims that

Defendant Ramirez would close her door after he arrived.  (*Id.* ¶ 43.)  Anne Thomas,

Defendant Ramirez's former assistant, told Plaintiff that Defendant Ramirez closed her

door when African American individuals were around her office.  (SSUF ¶ 47.)  At a

2018 faculty meeting, Plaintiff claims to have overheard Defendant Ramirez ask Dr.

Boatamo Mosupyoe, Associate Dean of the College of Social Sciences and

Interdisciplinary Studies,[3] "why did you hire that old Black man as a lecturer? He does

not represent the student body."[4]  (*Id.* ¶¶ 19–20.)  Plaintiff also claims that he heard

Defendant Ramirez make other comments "against Black people and the Pan-African

Studies Program" and that Defendant Ramirez would regularly ask "[w]hy do we keep

hiring all these Black people?" at the twice-a-month faculty meetings.  (JSUF ¶ 48;

SSUF ¶ 51.)  Plaintiff also alleges that Defendant Ramirez referred to Plaintiff as a "Pan-

---

[1] Plaintiff identifies himself as an African American man in his filings.  African American is used throughout this order except where individuals are quoted.

[2] The Court only cites portions of the separate statement of facts provided by Defendants that Plaintiff expressly states are undisputed.

[3] Plaintiff states that Dr. Mosupyoe is no longer in the same position and, at the time of her deposition was Dean of the CSUS Black Honors College, a separate department from the Ethnic Studies Department.  (Opp'n at 4.)  The Court refers to her by her former title as it appears that was her title at the time of most of the incidents in question.

[4] Plaintiff and Associate Dean Mosupyoe clearly understood this statement to be referencing Plaintiff, but it is not clear whether it is disputed that this alleged statement was in reference to Plaintiff.  (*Id.* ¶ 23; Mosupyoe Dep. at 41:1–12.)

1    African Studies hire" when he was actually hired and employed as a lecturer by the

2    Ethnic Studies Department more broadly.[5]  (SSUF ¶ 49.)

3        On November 3, 2020, Plaintiff filed a complaint with CSUS's Office of Equal

4    Opportunity in which he claimed that Defendant Ramirez was discriminating against

5    him on the basis of race and age.  (JSUF ¶ 53.)  Plaintiff later submitted an updated

6    complaint on February 1, 2021.  (*Id.* ¶ 54.)

7        In 2021, Plaintiff applied for a tenure-track faculty position in the Pan-African

8    Studies program which was created in response to the passage of AB 1460.  (SSUF

9    ¶¶ 59, 78.)  Hiring for the Pan-African Studies position was performed by a five-person

10   search committee.  (*Id.* ¶ 63.)  After one of the original members of the search

11   committee was unable to participate, Defendant Ramirez was requested to join the

12   search committee.  (*Id.* ¶ 70; JSUF ¶¶ 6-8.)  Defendant Ramirez was ultimately voted

13   onto the search committee.  (*Id.*)  Based on the applications the search committee

14   received, the search committee members each created a "top list" of candidates to

15   interview.  (SSUF ¶¶ 80, 105-06.)  Plaintiff applied for the Pan-African Studies position

16   but was not selected for an interview.  (*Id.* ¶ 127.)  After interviews were conducted,

17   the search committee ultimately recommended four candidates for hiring including

18   Dr. Martin Boston and Dr. Clarence George, III, both of whom were ultimately hired for

19   the Pan-African Studies position.[6]  (*Id.* ¶¶ 107-09.)  Both Dr. Boston and Dr. George

20   identify as African American.  (*Id.* ¶¶ 113-14.)

21       Plaintiff claims that Defendant Ramirez joined the search committee to ensure

22   that Plaintiff was not hired for the Pan-African Studies position.  (*Id.* ¶ 123.)  While a

23   member of the hiring committee, Defendant Ramirez did not place Plaintiff in her top

24   ////

25

26   [5] Pan-African Studies is a program within the Ethnic Studies Department at CSUS.  The Ethnic Studies Department is itself within the College of Social Sciences and Interdisciplinary Studies.

27

28   [6] While it was originally anticipated that only one Pan-African Studies position would be open, two Pan-African Studies program positions were ultimately available and filed.

1    list of ten candidates.  (SSUF ¶ 83–85.)  Other members of the committee had Plaintiff

2    on their top list.[7]  (*Id.* ¶ 89.)

3        **II.    Procedural History**

4            Plaintiff originally filed suit in Sacramento County Superior Court, but

5    Defendants removed the action to this Court on May 5, 2023.  (ECF No. 2.)  Plaintiff

6    now proceeds on his Second Amended Complaint ("SAC" (ECF No. 8)) wherein

7    Plaintiff brings claims for racial harassment and discrimination under both Title VII of

8    the 1964 Civil Rights Act and the California Fair Housing and Employment Act

9    ("FEHA"); failure to prevent racial discrimination and harassment under FEHA; age

10   discrimination, retaliation, and harassment under FEHA; failure to prevent age

11   discrimination and harassment under FEHA; and negligent hiring, supervision,

12   training, and retention under common law.  (*See id.*)  Briefing on Defendants'

13   summary judgment motion is completed.  (Mot. (ECF No. 20-1); Opp'n (ECF No. 24);

14   Reply (ECF No. 28).)  On February 6, 2025, the Court held oral argument on the

15   Motion, after which the matter was taken under submission.  (ECF No. 29.)

16                          **EVIDENTIARY OBJECTIONS**

17           In ruling on summary judgment, the Court must only consider admissible

18   evidence and resolve evidentiary objections that are material to its ruling.  *Orr v. Bank*

19   *of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2010); *Norse v. City of Santa Cruz*, 639

20   F.3d 966, 973 (9th Cir. 2010).  However, the Court need not consider objections made

21   on the ground that evidence is irrelevant, speculative, argumentative, or constitutes an

22   improper legal conclusion as these are "duplicative of the summary judgment

23   standard . . . ."  *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158,

24   1164 (S.D. Cal. 2019).  Additionally, at the summary judgment stage, the Court is not

25

26   ───────────────

     [7] It is undisputed that Dr. Brian Baker, another member of the committee had Plaintiff on his top list. (*Id.*
27   ¶ 89.)  Defendant Ramirez also allegedly stated that she was the only member of the hiring committee
     to not have Plaintiff on their top list.  Defendants object to the introduction of this evidence but, as
     discussed later, this evidence can be considered by the Court as it could be introduced at trial in
28   admissible form.  (*See infra* Evidentiary Objections.)

1    concerned with whether the form of evidence's presentation is admissible but whether

2    the content is admissible.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

3    Thus, evidence that is not presented in an admissible form, such as statements that

4    constitute hearsay, may be considered provided the evidence could be provided in an

5    admissible, non-hearsay form at trial.  *Id.* at 1036–37; *see Pablo-Dejesus v. County of*

6    *Multnomah*, No. 3:19-cv-01574, 2020 WL 8361919, at *4 (D. Or. Dec. 29, 2020).

7         Defendants have raised six objections to evidence presented by Plaintiff in

8    opposing Defendants' Motion for Summary Judgment.  (Obj. to Evid. (ECF No. 28-1).)

9    The first two objections concern the admissibility of portions of the Investigation

10   Report prepared by Special Consultant Investigator Susan Hua at the request of

11   CSUS's Office for Equal Opportunity in connection with the Pan-African Studies

12   position hiring and Plaintiff's allegations that Defendant Ramirez discriminated against

13   him.  (*See* Investigation Report (ECF No. 27-2).)  As the Investigation Report was

14   produced by Investigator Hua outside of any court proceeding, the Report itself is

15   hearsay.  Moreover, in many cases, the information contained in the Report is subject

16   to multiple levels of hearsay within hearsay as the Report largely consists of statements

17   by other witnesses that were provided to Investigator Hua.  However, the vast majority

18   of evidence relevant to deciding the Defendants' Summary Judgment Motion is also

19   found outside the Report in other admissible non-hearsay forms.  As such, the Court

20   need not consider the Report in deciding most of the Motion before it and

21   Defendants' objections to the Court considering the Report are sustained with two

22   exceptions.

23         Within the Investigation Report, Investigator Hua provides a quote from Dr.

24   Annette Reed who herself quoted Defendant Ramirez as telling Dr. Reed "I'm being

25   attacked again. They're after me again." (Investigation Report at 19.)  While in its

26   present form this statement contains at least two levels of hearsay, unlike other

27   statements contained within the report, the original quote would not itself be hearsay

28   given it is the statement of a party opponent.  *See* Fed. R. Evid. 801(d)(2)(A).  Due to

1   the multiple levels of hearsay, this statement would be inadmissible at trial as hearsay

2   in its current form.  However, this evidence could be presented in an admissible, non-

3   hearsay form at trial and may thus be considered by the Court.  *See Fraser*, 342 F.3d at

4   1036–37; *see also Pablo-Dejesus*, 2020 WL 8361919, at *4 (permitting hearsay

5   statements included in an investigation report where the statements could be

6   provided in an admissible, non-hearsay form at trial).  Defendants' objection to the

7   Court considering the contents of the Investigation Report is overruled as to this

8   statement.

9        Similarly, Investigator Hua's report states that Defendant Ramirez stated that her

10   top list was the only list that did not include Plaintiff as one of the top candidates.

11   (Investigation Report at 10.)  This evidence could be presented in an admissible non-

12   hearsay form on the same basis as the prior statement.  *See Fraser*, 342 F.3d at 1036–

13   37; *see also Pablo-Dejesus*, 2020 WL 8361919, at *4.  As such, it may be considered

14   by the Court and Defendants' objection to the usage of the contents of the

15   Investigation Report is also overruled as to this evidence.

16        Defendants' third objection concerns Plaintiff's deposition statements that Anne

17   Thomas told him Defendant Ramirez closed her office door when African American

18   individuals were around.  Defendants first object on hearsay grounds.  Given that the

19   Court has Thomas' own statements on this issue as provided in her deposition, the

20   Court need not consider Plaintiff's recollection of Thomas' statement for the truth of

21   the matter asserted.  However, these statements may still be considered not for the

22   truth of the matter asserted but for their effect on Plaintiff.  Defendants also object that

23   Plaintiff's recounting of Thomas' statements lacks foundation and is speculative.  But

24   Thomas' own testimony on this issue sufficiently establishes that Thomas perceived

25   that Defendant Ramirez would close her door when African American individuals were

26   around Defendant Ramirez's office.  (*See* Thomas Dep. at 15:16–20:24.)  Thomas'

27   reliability and truthfulness in this regard is an issue for a jury to determine at trial.

28   Thus, Defendants' objection to this evidence is sustained to the extent these

statements are presented for the truth of the matter asserted but overruled on all other grounds.

Finally, Defendants' fourth, fifth, and sixth objections concern evidence that is not relevant for the Court to consider in ruling on Defendants' Motion. This evidence has not been considered by the Court in reaching the conclusions below. Thus, the Court need not rule on these objections. *Holt*, 370 F. Supp. 3d at 1164.

## LEGAL STANDARD

Summary judgment may be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The principal purpose of summary judgment is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Therefore, the "threshold inquiry" is whether there are any factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the burden then shifts to the opposing party, which must establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). To meet their burden, parties must either cite to materials in the record supporting their position or show that the materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

For the opposing party to succeed and avoid summary judgment, they "must do more than simply show that there is some metaphysical doubt as to the material

facts*.*" *Matsushita*, 475 U.S. at 586.  Rather, the opposing party must produce enough evidence such that the specific facts set forth by the nonmoving party, coupled with undisputed background or facts, are such that a reasonable jury might return a verdict in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, for the moving party to succeed, the court must conclude that no rational trier of fact could find for the opposing party.  *Matsushita*, 475 U.S. at 587.  However, so as not to usurp the role of the jury, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and so the court draws all reasonable inferences and views all evidence in the light most favorable to the opposing party.  *Liberty Lobby*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587–88.

## DISCUSSION

### I.    Plaintiff's Racial Discrimination and Harassment Claims under Title VII and FEHA[8]

#### A. Racial Discrimination

Plaintiff's first and second cause of action brings claims under Title VI and FEHA under two theories, the first of which is a racial discrimination theory based on the failure to offer him an interview for the Pan-African Studies position.  In racial discrimination cases under Title VII and FEHA, courts most commonly employ the *McDonnell Douglas* burden shifting framework under which the plaintiff must first establish a *prima facie* case of discrimination, then the defendant may show that the action was taken for a legitimate, non-discriminatory reason, and finally, the plaintiff may rebut the defendant's evidence by showing the reasons offered by the defendant are a pretext for discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

---

[8] Plaintiff brings racial discrimination and harassment claims under both Title VI and FEHA.  As noted by both parties (*see* Mot. at 18, 21; Opp'n at 11 n.1), FEHA mirrors Title VII for racial discrimination and harassment.  Defendants move for summary judgment on the same grounds for both the Title VI and FEHA causes of action.  (Mot. at 10–18, 21.)  As such, these claims are considered jointly.

### i. *Prima Facie* Racial Discrimination

In order to succeed on a racial discrimination claim under Title VII and FEHA, Plaintiff must first establish a *prima facie* case by "offer[ing] evidence that gives rise to an inference of unlawful discrimination." *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1359 (9th Cir. 1985) (cleaned up). This *prima facie* case is typically satisfied, and the inference of unlawful discrimination is established, using the test described *McDonnell Douglas* where a plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). Defendants contend that Plaintiff cannot present evidence to satisfy the fourth and final requirement of *prima facie* discrimination under the four element *McDonnell Douglas prima facie* test as he cannot show that individuals outside his protected class were treated more favorably. (Mot. at 11.)

Under the traditional test for establishing a *prima facie* case, Defendants are correct. As Defendants note, the two individuals who were ultimately hired for the Pan-African Studies position also identified as African American. (*Id.* at 12.) Plaintiff also testified that applicants for the Pan-African Studies position were "all African Americans." (Cook Dep. at 140:19–24; 141:12–18.)[9] Plaintiff has not presented any evidence that similarly situated individuals of other races were treated more favorably. Plaintiff likely cannot provide that evidence because, per Plaintiff's own testimony, the only applicants were members of his protected class. Plaintiff thus cannot meet the fourth element to establish a *prima facie* case of racial discrimination under the four element *McDonnell Douglas* test.

////

---

[9] Defendants have lodged the entirety of Plaintiff's deposition transcript, but the relevant portion cited here can be found in Exhibit F to Defendants' Motion to Summary Judgment. (*See* ECF No. 20-4.)

1    The four element test identified in *McDonnell Douglas* is not the only way to

2   establish a *prima facie* case, however.  The Ninth Circuit has repeatedly reinforced that

3   the *prima facie* test described in the *McDonnell Douglas* is not the only way to

4   establish the requisite "inference of discrimination" to create a *prima facie* Title VII

5   discrimination claim.  *See Diaz*, 752 F.2d at 1361.  Under Ninth Circuit precedent, a

6   plaintiff "may demonstrate an inference of discrimination in whatever manner is

7   appropriate in the particular circumstances." *Id.*  It is still necessary for Plaintiff to offer

8   some evidence that gives rise to the inference of discrimination by suggesting that

9   "[the] employment decision was based on a discriminatory criterion illegal under the

10   [Civil Rights] Act." *International Brotherhood of Teamsters v. United States*, 431 U.S.

11   324, 358 (1977).  But this is not intended to be a high burden; "[v]ery little evidence is

12   necessary to raise a genuine issue of fact regarding an employer's motive; any

13   indication of discriminatory motive may suffice to raise a question that can only be

14   resolved by a fact-finder." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th

15   Cir. 2004) (cleaned up); *see Diaz*, 752 F.2d at 1361.

16    As discussed below, Plaintiff has presented sufficient evidence for a jury to find

17   that Plaintiff was subject to racial discrimination in the form of a hostile workplace.

18   The entire basis for the discrimination claim is Defendant Ramirez's alleged

19   statements and actions both as to Plaintiff specifically and African Americans

20   generally.  Defendant Ramirez's presence on the hiring committee given her alleged

21   discriminatory conduct is enough to indicate a discriminatory motive and meet the

22   low bar to create an inference of discrimination.  Thus, while Plaintiff has not strictly

23   satisfied all elements of the four element *McDonnell Douglas* test for a *prima facie*

24   case, the evidence is sufficient to create a genuine dispute of material fact as to

25   whether a discriminatory motive drove the decision to not interview Plaintiff for the

26   Pan-African Studies position.  Thus, Plaintiff has still satisfied his initial *prima facie*

27   burden.

28   *////*

1    Cases where courts permit claims to proceed even where the fourth element of

2    the *McDonnell Douglas prima facie* test is not strictly satisfied are sometimes

3    distinguishable from the facts here.  For example, in *Diaz*, cited by Plaintiff, the court

4    was careful to limit the scope of its ruling and only sought to address the facts before

5    it.  While the court found that the later hiring of a member of the same class as the

6    plaintiff did not preclude a discrimination claim, the court also noted that the timing of

7    the hiring was relevant stating "[w]hen the individual who was promoted receives the

8    challenged position only after the plaintiff has filed a discrimination charge, the fact

9    that both individuals are members of the same protected class does not rebut the

10   otherwise established inference of discrimination."  *Id.* (emphasis added).  This is

11   clearly not the case here; the two individuals who were ultimately selected for the Pan-

12   African Studies position, both of whom identify as African American, were selected to

13   advance to the interview stage by the hiring committee – including by Defendant

14   Ramirez herself – at the same time Plaintiff was not selected.  (SSUF ¶ 84.)  *Diaz* is thus

15   distinguishable in some ways from the present case.

16       With that said, the Ninth Circuit was still clear in *Diaz* that Title VII was intended

17   to protect both individuals and groups.  In doing so, the court quoted the Supreme

18   Court's statement in *Connecticut v. Teal*, 457 U.S. 440, 455 (1982) that "Congress

19   never intended to give an employer license to discriminate against some employees

20   on the basis of race or sex merely because he favorably treats other members of the

21   employees' group."  *Diaz*, 752 F.2d at 1360.  As such, the overall point that

22   discrimination claims are not precluded by the fact that another member of the same

23   group was successful where the plaintiff was not, still stands.  Plaintiff has presented

24   sufficient evidence to demonstrate an inference of discrimination and create a

25   genuine dispute of material fact.

26       **ii.    Legitimate, Non-Discriminatory Reason**

27       Defendants contend that even if Plaintiff can make a *prima facie* case of racial

28   discrimination, Defendants then have the burden to establish that Plaintiff was not

11

1  interviewed for a legitimate, non-discriminatory reason.  Defendants argue that while

2  Plaintiff was qualified for the position, he was not hired for the position because he did

3  not have a doctorate in African Studies or Ethnic Studies, and because he was not

4  hired he did not have peer-reviewed publications or presentations at academic

5  conferences or fellowships.  (Mot. at 12.)  This is a legitimate, non-discriminatory

6  reason but a jury could reasonably find that it is pretextual.

7      **iii.    Pretext**

8      It is uncontested that Plaintiff was qualified for the Pan-African Studies position

9  and that at least one member of the search committee, Dr. Brian Baker, had Plaintiff

10  on their "top list" to receive an interview.  (Mot. at 12; SSUF ¶ 89; Baker Decl. (ECF No.

11  20-4, Ex. C) ¶ 7.)  Moreover, Defendant Ramirez allegedly told Investigator Hua that

12  her top list was the only one that did not include Plaintiff.  (Investigation Report at 10.)

13  Given the evidence Plaintiff has presented about Defendant Ramirez's conduct

14  outside of the context of the hiring committee, a jury could reasonably conclude that

15  Defendants' claimed legitimate, non-discriminatory reasons for not interviewing

16  Plaintiff was pretextual and in fact the result of Defendant Ramirez's intent to

17  discriminate against Plaintiff.  As discussed above, the fact that all applicants for the

18  Pan-African Studies position were African American is not preclusive to Plaintiff's

19  claims.

20      Defendants also argue that Plaintiff cannot show that Ramirez's decision to

21  leave him off her top list was the reason he did not receive an interview and that even

22  if he had received an interview, Plaintiff cannot show he would have been hired.  The

23  former issue is clearly the subject of some serious factual disagreement as Defendants

24  dispute whether Defendant Ramirez's decision to leave Plaintiff off her top list had any

25  effect on the decision to not interview him, while Plaintiff claims he would have been

26  guaranteed an interview if Defendant Ramirez had placed him on her top list.

27  Whether there is a causal link between Defendant Ramirez's decision to not include

28  Plaintiff on her top list and the fact that Plaintiff was not interviewed is thus a factual

1  question for the jury to decide.  While the question of whether Plaintiff would have

2  ultimately been hired if he had received an interview may prevent an issue for

3  damages, it is not necessary that Plaintiff be able to prove such a speculative fact in

4  order to succeed on a racial discrimination claim.  It is sufficient that Plaintiff can

5  establish that he suffered an adverse employment action.  A jury could reasonably

6  conclude that the decision to not interview Plaintiff for the Pan-African Studies position

7  was an adverse employment action.  *See Foster v. Costco Wholesale Corp.*, No. 17-cv-

8  02229-FMO-SPx, 2019 WL 8640647, at *7 (C.D. Cal. Dec. 27, 2019); *see also Doan v.*

9  *San Ramon Valley Sch. Dist.*, No. 13-cv-03866-CRB, 2014 WL 296861, at *2 (N.D. Cal.

10  Jan. 27, 2014).

11        In sum, there is a genuine dispute of material fact as to whether the alleged

12  legitimate, non-discriminatory reason for not interviewing Plaintiff was pretextual.

13  Defendants' Motion for Summary Judgment on Plaintiff's racial discrimination claim

14  must thus be denied.

15        **B.  Racial Harassment**

16        As alluded to above, there are genuine disputes on material issues of fact that

17  also preclude summary judgment as to Plaintiff's racial harassment claim under Title

18  VII and FEHA.  "To prevail on a hostile workplace claim premised on [race], a plaintiff

19  must show: (1) that he was subjected to verbal or physical conduct of a racial . . .

20  nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently

21  severe or pervasive to alter the conditions of the plaintiff's employment and create an

22  abusive work environment."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th

23  Cir. 2003).  The plaintiff must establish both that the work environment was both

24  objectively and subjectively hostile.  *McGinest*, 360 F.3d at 1113.  "Whether an

25  environment is sufficiently hostile or abusive must be judged by looking at all the

26  circumstances, including the frequency of the discriminatory conduct; its severity;

27  whether it is physically threatening or humiliating, or a mere offensive utterance; and

28  whether it unreasonably interferes with an employee's work performance."  *Clark*

1    *County Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (cleaned up). "The required

2    level of severity or seriousness varies inversely with the pervasiveness or frequency of

3    the conduct." *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 872 (9th Cir. 2001).

4        It is uncontested that Plaintiff has established the subjective hostility

5    requirement. (*See* Reply at 7.)  Defendants' argument is that Plaintiff has not met his

6    burden to show that the working environment was objectively hostile.  Plaintiff's

7    evidence of harassing conduct related to Plaintiff's race consists of: (1) Defendant

8    Ramirez's "coldness" and failure to "welcome" him during his first faculty meeting in

9    2017; (2) Defendant Ramirez asking Associate Dean Boatamo Mosupyoe in 2018 why

10   "that old black man" was hired in reference to Plaintiff; (3) Defendant Ramirez shutting

11   her door when African American individuals were near her office; (4) Defendant

12   Ramirez's opposition to hiring additional African American professors and lecturers

13   during staff meetings and "constantly say[ing] things in meetings against Black people

14   and Pan-African Studies Program" (Cook Dep. 37:19–21) while not making any such

15   statements in relation to hirings in other programs of the Ethnic Studies Department;

16   and (5) Defendant Ramirez repeated mischaracterization of African American

17   members of the Ethnic Studies Department as a "Pan-African Studies" hires (*id.* at

18   48:13–49:3, 60:16–61:1).

19       There is evidence to support each of these allegations, though Defendants

20   contest the veracity of that evidence.  If a jury were to accept this evidence as true,

21   they could find for Plaintiff on a hostile workplace claim.  The bulk of Defendant

22   Ramirez's alleged actions and statements directed at Plaintiff were closing her office

23   door when Plaintiff was nearby, and the "old black man" comment made to Associate

24   Dean Boatamo Mosupyoe.  However, hostile workplace claims can be premised on

25   general race-related comments and actions that are not specifically targeted toward a

26   particular individual.  *See McGinest*, 360 F.3d at 1117.  Additionally, Plaintiff was

27   present at the bimonthly faculty meetings where Defendant Ramirez allegedly

28   repeatedly spoke "against Black people" and questioned the hiring of African

14

1  American individuals to the Ethnic Studies Department. (*See* Cook Dep. 37:19–21; *id.*

2  48:13–50:1 (stating that Defendant Ramirez would complain about the Pan-African

3  Studies program hiring more faculty at twice-a-month faculty meetings); Mosupyoe

4  Dep. 59:24–60:23 (stating that Defendant Ramirez opposed hiring African American

5  staff "every time" it came up).) This included regularly asking "[w]hy do we keep hiring

6  all these Black people?" during faculty meetings. (Cook Dep. 50:2–51:22.) Defendant

7  Ramirez purportedly did not raise similar objections to hiring staff for any other

8  program within the Ethnic Studies Department besides the Pan-African Studies

9  program. (Mosupyoe Dep. at 53:4–54:2, 63:2–13.) Witnesses have also testified that

10 Defendant Ramirez would repeatedly assume and refer to African American CSUS

11 staff members as members of the Pan African Studies program, despite being

12 corrected that they were actually members of the Ethnic Studies Department more

13 generally. (Mosupyoe Dep. 53:23–54:8.) This included making similar remarks

14 around and to Plaintiff himself. (Cook Dep. 46:17–47:14.)

15     The facts here present a close case for racial discrimination. The alleged

16 conduct does not include some of the direct bigotry and/or racist stereotypes found

17 in other cases. *See e.g.*, *Few v. Lenovo (United States), Inc.*, No. 4:20-cv-03115-KAW,

18 2021 WL 5973053, at *4 (N.D. Cal. Dec. 14, 2021); *Wallis v. Greyhound Lines, Inc.*, No.

19 2:19-cv-03448-JWH-Ex, 2021 WL 1573817, at *3 (C.D. Cal. Jan. 19, 2021). However,

20 viewing the evidence in the light most favorable to Plaintiff, a reasonable fact finder

21 could conclude that Defendant Ramirez's actions and statements were sufficiently

22 severe and pervasive when combined to create a hostile work environment due to

23 their repeated nature and their apparent targeting toward Defendant Ramirez's

24 African American co-workers. The combination of repeated negative statements and

25 actions towards African Americans and the Pan-African Studies program generally as

26 well as specific negative actions toward Plaintiff seemingly based on his race could be

27 sufficient for a jury to find that, in sum, these events altered the conditions of the

28 plaintiff's employment and created an abusive work environment. While the level of

15

severity of the conduct in question is relatively low as compared to other cases, it was

sufficiently pervasive such that Plaintiff's claims do not fail as a matter of law.  *See*

*Nichols*, 256 F.3d at 872 ("The required level of severity or seriousness varies inversely

with the pervasiveness or frequency of the conduct." (Internal citations and quotations

removed)).  There exists a genuine dispute as to what Defendant Ramirez's conduct

and statements were and whether they were sufficiently severe or pervasive to create

an abusive work environment.

Plaintiff's Title VII and FEHA racial harassment claims thus do not fail as a matter

of law and there are triable issues of fact related to these claims.  Accordingly,

Defendants' Motion for Summary Judgment is denied on this basis.

## II.    Plaintiff's Fourth and Fifth Causes of Action for Age Discrimination and Harassment Under FEHA

### A.  Age Harassment

Plaintiff also brings both age discrimination and harassment claims under

FEHA.  The Court first starts with Plaintiff's age harassment theory of liability.  The

elements of an age-based harassment claim under FEHA are the same as those for a

race-based claim: "(1) the plaintiff belongs to a protected group; (2) the

plaintiff was subjected to unwelcome harassment because of being a member of that

group; and (3) the harassment was sufficiently severe or pervasive to alter the

conditions of employment and create an abusive working environment."  *Landucci v.*

*State Farm Ins.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014).

Here, the only alleged conduct related to age was Defendant Ramirez's

questioning of Associate Dean Boatamo Mosupyoe about why she had hired "that old

black man" when he did not represent the student body.[10]  This single statement is not

---

[10] While Plaintiff has also alleged that Defendant Ramirez made other statements related to age more generally, there is no evidence that Plaintiff was aware of any statements related to age besides the one noted above.  While harassing age-based statements not specifically directed toward Plaintiff could still create a hostile work environment and support his claims, this is only the case where Plaintiff <u>knew</u> of those statements.  *See Brooks v. City of Mateo*, 229 F.3d 917, 924 (9th Cir. 2000); *see also Biggs v.*

1   sufficiently severe to form the basis for an age harassment claim under FEHA.  *See Lyle*

2   *v. Warner Bros. Television Prod.*, 38 Cal. 4th 264, 283 (2006) (stating that FEHA does

3   not create liability for "harassment that is occasional, isolated, sporadic, or trivial"); *see*

4   *also Eyraud v. Swift Transp. Corp.*, No. 2:17-cv-00791-JAM-DB, 2018 WL 2157176, at

5   *3 (E.D. Cal. May 10, 2018).  Accordingly, there is no genuine dispute of material fact

6   and Defendants are entitled to judgment as a matter of law as to Plaintiff's FEHA age

7   harassment cause of action.

8       **B.  Age Discrimination**

9       Plaintiff also brings age discrimination claims based on the failure to interview

10   him for the Pan-African Studies position.  The Court applies the same analysis to age

11   discrimination claims under FEHA as racial discrimination claims.  (*See supra*

12   Discussion I.A.)

13       Defendants are entitled to summary judgment as to Plaintiff's age-based

14   discrimination claim.  Like with the race discrimination claim, Plaintiff has not met the

15   fourth requirement to establish a *prima facie* age discrimination case under the four

16   element *McDonnell Douglas* test.  This requires that Plaintiff must show that he was

17   treated less favorably than similarly situated younger individuals.  *Cozzi v. County of*

18   *Marin*, 787 F. Supp. 2d 1047, 1057 (N.D. Cal. 2011).  Plaintiff has presented no

19   evidence from which a jury could conclude that Plaintiff was treated less favorably

20   than other, younger applicants for the Pan-African Studies position.  Plaintiff cites no

21   evidence about the age of any other applicant for the Pan-African Studies position, let

22   alone evidence about the treatment of those applicants.  Absent such evidence,

23   Plaintiff cannot meet the fourth requirement of the *prima facie* case under the four

24   element *McDonnell Douglas* test.

25       Unlike Plaintiff's racial discrimination claim though, Plaintiff has not provided

26   sufficient evidence that a discriminatory reason more likely than not motivated the

27   

28   *Nicewonger Co.*, 897 F. Supp. 483, 485 (D. Or. 1995).  Thus, such evidence is not relevant for purposes of age-based harassment.

1    decision not to hire Plaintiff for the Pan-African Studies position. *See Diaz*, 752 F.2d at

2    1361. Plaintiff's evidence supporting any inference of discrimination is limited to (1)

3    Defendant Ramirez questioning Associate Dean Mosupyoe in 2018 about why she

4    hired "that old black man" in reference to Plaintiff and (2) Defendant Ramirez's

5    statement that CSUS needed to hire younger applicants during a different hiring

6    process. (Opp'n at 18–19.) The former statement was an isolated statement made

7    approximately three years prior to the hiring for the Pan-African Studies position for

8    which Plaintiff had applied. The latter is a single statement that was overheard by

9    Associate Dean Mosupyoe at a different time in connection with a separate hiring

10   process for a LatinX/ChincanX Studies position. (*Id.*) These two statements, made

11   years separate from the hiring for the Pan African Studies position at issue, are the full

12   scope of alleged conduct related to age.

13          Given the limited nature of the statements both in terms of severity and

14   pervasiveness, as well as the fact that Plaintiff has not presented evidence of age

15   based discrimination connected with the hiring of the Pan-African Studies position,

16   this evidence is insufficient to establish an inference of discrimination. Plaintiff has not

17   presented any other evidence to show an age-based discriminatory intent in the

18   decision to not interview Plaintiff for the Pan-African Studies position. The factual

19   allegations thus cannot support a discrimination action based on Plaintiff's age and

20   the decision to not interview him for the tenured Pan-African Studies position.

21          Given the above, taking all evidence and inferences in favor of Plaintiff, Plaintiff

22   cannot establish a *prima facie* age-based discrimination claim, regardless of what

23   approach is used. Accordingly, Defendants are entitled to summary judgment on

24   Plaintiff's age discrimination claim.

25   ////

26   ////

27   ////

28   ////

1  **III.    Plaintiff's Fourth Cause of Action for Retaliation Under FEHA[11]**

2       There are genuine disputes of material facts that preclude the Court from

3  granting summary judgment as to Plaintiff's FEHA retaliation claim.  For retaliation

4  claims under FEHA, courts still apply the burden shifting process described in

5  *McDonnell Douglas*.  To meet the first step and make a *prima facie* case for retaliation

6  under FEHA, a plaintiff must establish that (1) he was engaging in a protected activity,

7  (2) the employer subjected him to an adverse employment decision, and (3) there was

8  a causal link between the protected activity and the employer's action.  *Guyton v.*

9  *Novo Nordisk, Inc.*, 151 F. Supp. 3d 1057, 1069 (C.D. Cal. 2015).  Defendants contend

10 that Plaintiff cannot meet the third element.  (*See* Mot. at 19.)

11      The theory underlying Plaintiff's retaliation claim is essentially that Defendant

12 Ramirez knew Plaintiff had submitted complaints regarding the statements and

13 conduct discussed above, knew that Plaintiff was applying for the Pan-African Studies

14 position, and joined the hiring committee to prevent Plaintiff from receiving that

15 position.  Plaintiff argues that a jury could conclude Defendant Ramirez knew Plaintiff

16 was applying for the position because she was also present at a faculty meeting where

17 other faculty encouraged Plaintiff to apply for the tenure Pan-African Studies position.

18 Plaintiff also argues there is evidence that Defendant Ramirez knew Plaintiff had filed

19 complaints against her previously because Defendant Ramirez allegedly stated "I'm

20 being attacked again. They're after me again[,]"[12] during the investigation of the Pan-

21 African Studies position hiring process.  (Investigation Report at 19.)

22      Defendants contend that Defendant Ramirez's presence at a meeting where

23 Plaintiff was encouraged to apply does not mean that Defendant Ramirez knew that

24 Plaintiff intended to apply (Reply at 3), but this evidence is at least sufficient to create a

25 _____

26 [11] While in the SAC Plaintiff brings his FEHA age harassment and retaliation claims in the same cause of action, the Court here separates these as Plaintiff's retaliation and age-based discrimination claims

27 concern different relevant facts and theories of liability.

28 [12] Concerning the admissibility of this statement, see the Court's discussion above.  (*See supra* Evidentiary Objections.)

1    genuine issue of material fact as to whether Defendant Ramirez knew Plaintiff

2    intended to apply for the Pan-African Studies position.  Similarly, though Defendants

3    argue that Defendant Ramirez's statement that she was being attacked "again" does

4    not mean that Defendant Ramirez was aware of Plaintiff's prior complaints as it was

5    made "after the [Pan-African Studies] search process concluded," (*id.* at 10 (emphasis

6    in original)), this is Defendants' interpretation of this evidence.  This statement could

7    be alternatively interpreted as Defendant Ramirez referencing Plaintiff's November 3,

8    2020 complaint and updated February 1, 2021 complaint as "attacks" and that the

9    Pan-African Studies investigation was a new attack.  This interpretation is supported by

10   Defendant Ramirez's alleged usage of the word "again" in her statements that she was

11   being attacked and that they were after her.

12         Whether Defendant Ramirez knew of Plaintiff's complaints is a material fact and

13   the interpretation of Defendant Ramirez's statement represents a genuine dispute that

14   can only be resolved by a finder of fact.  Accordingly, Defendants' Motion for

15   Summary Judgment is denied as Plaintiff's FEHA retaliation claim.

16   **IV.    Failure to Prevent Claims**

17         Plaintiff brings claims under FEHA against CSU for failure to prevent

18   discrimination and harassment on the basis of Plaintiff's race and age.  Defendants

19   only argue that to the extent Plaintiff cannot establish claims for discrimination or

20   harassment, the related failure to prevent claims should be dismissed.  Plaintiff

21   contends that all of his claims are viable for the reasons stated in their opposition but

22   does not argue that summary judgment would not be appropriate where the

23   underlying claim has been dismissed.

24         As the Court has granted summary judgment as to some, but not all of Plaintiff's

25   discrimination and harassment claims, the Court will grant summary judgment as to

26   the related Failure to Prevent claim.  Where the Court has denied summary judgment

27   as to those claims, summary judgment is also denied as to the related Failure to

28   Prevent claim.

### V.   Common Law Claim

Both Plaintiff and Defendants agree that Defendants should be granted summary judgment as to Plaintiff's claim against CSU for negligent hiring, supervision, training, and retention.  As such, the Court grants summary judgment for Defendants as to this claim.

### CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (ECF No. 20) is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' Motion is GRANTED as to:

    a.  Plaintiff's age discrimination claim under FEHA (Fourth Cause of Action)[13],

    b.  Plaintiff's age harassment claim under FEHA (Fifth Cause of Action),

    c.  Plaintiff's claims under FEHA for failure to prevent age discrimination and harassment (Sixth Cause of Action), and

    d.  Plaintiff's common law claim for negligent hiring, supervision, training and retention (Seventh Cause of Action).

2. Defendants' Motion is DENIED as to:

    a.  Plaintiff's race discrimination claims under Title VII and FEHA (First and Second Claim for Relief),

    b.  Plaintiff's race harassment claim under Title VII and FEHA (First and Second Claim for Relief),

////

////

////

---

[13] As noted above, the Court here divides Plaintiff's Fourth Cause of Action between Plaintiff's FEHA age discrimination claim, for which summary judgment is granted, and Plaintiff's FEHA retaliation claim for which summary judgment is denied.

c.  Plaintiff's claim under FEHA failure to prevent race discrimination and harassment (Third Claim for Relief), and

d.  Plaintiff's claim for retaliation under FEHA (Fourth Cause of Action).

IT IS SO ORDERED.

Dated:   **April 17, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – cook24cv01098.msj

22